**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL CASE NO. 26-cr-158 (AHA)** |
| **COLLIN L. WELCH,** | |
| **Defendant.** | |

**STATEMENT OF OFFENSE**

The United States of America, by its attorney, the United States Attorney for the District of Columbia respectfully submits the following Statement of Offense in the above-captioned case.

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything the defendant said, is it a recitation of all that the defendant said.

The parties stipulate to the following facts.

**BACKGROUND**

1.      COLLIN L. WELCH, a Major in the D.C. National Guard, resided in the District of Columbia and Virginia, and during all relevant times was married to INDIVIDUAL 1.  Prior to the incidents as described herein, WELCH served in an official capacity for the United States military, including deployments to Afghanistan and Djibouti.

2.      INDIVIDUAL 1 is a U.S. citizen, and WELCH's spouse, who resided in Virginia.

3.      INDIVIDUAL 2 is a Mongolian national who resided in Mongolia and illegally resided in Virginia after overstaying a legal visa.

4.      INDIVIDUAL 3 is the minor child of INDIVIDUAL 2, who resided in Mongolia and illegally resided in Virginia after overstaying a legal visa.

5.      WELCH was in a romantic relationship with INDIVIDUAL 2, and at various times resided with INDIVIDUAL 2 and INDIVIDUAL 3 in Mongolia and in Virginia.

**WELCH UNLAWFULLY INDUCED ALIENS TO ENTER
AND REMAIN IN THE UNITED STATES**

6.      In 2018, WELCH was serving in the Alaska National Guard, and was offered a position in the Office of Defense Cooperation at the U.S. Embassy in Mongolia. WELCH accepted the offer and moved to Mongolia with his wife INDIVIDUAL 1, and their children.

7.      In 2019, INDIVIDUAL 1 left Mongolia for medical reasons and returned to Alaska. WELCH remained in Mongolia.

8.      During a July 4th party in 2019 at the U.S. Embassy, hosted by WELCH, he began a relationship with INDIVIDUAL 2, a Mongolian national who worked with WELCH while employed as a staff member by the U.S. Embassy.

9.      WELCH's relationship with INDIVIDUAL 2 became physical, and WELCH extended his assignment in Mongolia by one year, telling INDIVIDUAL 2 that he intended to leave INDIVIDUAL 1 and end his marriage in order to be with INDIVIDUAL 2.

10.      As their relationship progressed, INDIVIDUAL 2 would stay with WELCH at his U.S. government (USG) owned/leased residence with her minor daughter, INDIVIDUAL 3, and drive WELCH's personal vehicle, which had diplomatic license plates.

11.      In March 2020, WELCH left Mongolia due to the COVID-19 pandemic, and stayed in Hawaii until August 2020.  While WELCH was in Hawaii, INDIVIDUAL 2 had the keys to his USG owned/leased house and his car in Mongolia.

12.     WELCH returned to Mongolia in approximately August 2020, and remained there until August 2021, continuing his romantic relationship with INDIVIDUAL 2, and discussed staying together with her even after his Mongolia assignment ended.

13.     After departing Mongolia, WELCH returned to Alaska, rejoined with INDIVIDUAL 1 and his children, returned to a civilian job as a Federal Technician on a military base, and continued to serve in the Alaska National Guard.

14.     INDIVIDUAL 2 and INDIVIDUAL 3, using tourist visas, visited WELCH in Alaska in late Summer/early Fall of 2021, and returned to Mongolia prior to the expiration of their visas.  During this time period WELCH created a fraudulent Alaska divorce decree which he provided to INDIVIDUAL 2 to falsely convince her that he was divorced from INDIVIDUAL 1.

15.      In March 2022, WELCH relocated to Little Rock, Arkansas to assume a position with the National Guard Bureau Professional Education Center.  WELCH did not bring INDIVIDUAL 1 or his children to Arkansas.

16.     In Summer 2022, INDIVIDUAL 2 visited WELCH in Arkansas.  WELCH and INDIVIDUAL 2 made plans to get married, and in Summer 2022 WELCH travelled to Mongolia where he married INDIVIDUAL 2 under Mongolian law.  On the Mongolian marriage certificate WELCH falsely indicated that he was not currently married, when he was in fact still married to INDIVIDUAL 1.

17.     WELCH did not petition for INDIVIDUAL 2 to receive a fiancée or spouse visa as he believed that doing so would cause the U.S. Embassy in Mongolia to discover that he was still married to INDIVIDUAL 1.

18.     WELCH accepted a new full-time active-duty position with the D.C. National Guard's State Sponsorship Program, which coordinated ongoing military-to-military engagements with foreign nations.  This position required regular foreign travel for WELCH.  INDIVIDUAL 1

and WELCH's children moved to the Washington, D.C. area in March 2023.  WELCH resided with INDIVIDUAL 1 and his children, but at the time did not inform INDIVIDUAL 2 that he was living with his family.

19.    In order to have INDIVIDUAL 2 continue to believe that WELCH was not living with INDIVIDUAL 1 and his children, WELCH would intermittently stay in hotels, and conduct video calls with INDIVIDUAL 2 from hotel rooms so she would believe that WELCH was not living with his family.  WELCH often paid for the hotel rooms through unauthorized use of his government travel card (GTC), managed through the D.C. National Guard.

20.    In Spring 2023, WELCH was scheduled to travel to Germany for an official conference, and made plans to meet with INDIVIDUAL 2 while in Germany.  The trip was canceled, but WELCH still traveled to Germany using his GTC for expenses, telling his leadership at the D.C. National Guard that he was going on personal leave, and telling INDIVIDUAL 1 that he was leaving on official travel.  WELCH traveled to Germany where he spent time with INDIVIDUAL 2.

21.    In 2024, WELCH decided to bring INDIVIDUAL 2 and INDIVIDUAL 3 to the United States, with the intent of appeasing INDIVIDUAL 2 and preventing her from reaching out to INDIVIDUAL 1 so that WELCH could maintain his relationship generally.

22.    On or about June 26, 2024, WELCH used his GTC to purchase airline tickets for INDIVIDUAL 2 and INDIVIDUAL 3 to travel to the United States, resulting in an approximate $3,234 charge to the GTC.

23.    On approximately July 28, 2024, INDIVIDUAL 2 and INDIVIDUAL 3 arrived in the United States on tourist visas, and initially resided with WELCH in hotel rooms paid for by WELCH using both his personal credit cards and his GTC.

24. On approximately October 11, 2024, WELCH, despite being legally married to INDIVIDUAL 1, married INDIVIDUAL 2 in Virginia. WELCH falsely indicated on the Virginia marriage application that he was not previously married. INDIVIDUAL 2 also falsely indicated that she was not previously married.

25. In approximately January 2025, INDIVIDUAL 2 and INDIVIDUAL 3's tourist visas expired, and they were therefore in the United States without a legal immigration status. WELCH desired to assist INDIVIDUAL 2 and 3 with their expenses while in the United States, but understood that doing so supported them in their residency having overstayed their respective visas.

26. WELCH was aware that INDIVIDUAL 2 and INDIVIDUAL 3's tourist visas expired, and knowingly continued to financially support them and pay for their housing.

27. In response to INDIVIDUAL 2 inquiring from WELCH about the citizenship status for herself and for INDIVIDUAL 3, WELCH generated multiple fake documents to falsely convince INDIVIDUAL 2 that the formal process for obtaining U.S. citizenship had begun and was pending for her and INDIVIDUAL 3, and that they were officially categorized as military dependents and eligible for military benefits. The fake documents WELCH provided to INDIVIDUAL 2 were never submitted to any government entity.

28. The fake/forged documents created by WELCH and provided to INDIVIDUAL 2 included:

   a. A purported "Memorandum for Record" from WELCH to the D.C. National Guard, dated August 2, 2024, noting that INDIVIDUAL 2 and INDIVIDUAL 3 had arrived in the United States on July 28, 2024, that their names were submitted to the U.S Army for benefits enrollment and they required issuance of their visas.

b. Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS) Form I-797C, purporting to indicate that INDIVIDUAL 2 and INDIVIDUAL 3 were granted permanent residence in the United States

c. DHS website printouts of I-94 forms, which purported to show that INDIVIDUAL 2 and INDIVIDUAL 3 were admitted to the United States on July 28, 2024, under CR1 visas, authorizing permanent residence and work in the United States.

d. Fake Social Security Cards with fake social security numbers for INDIVIDUAL 2 and INDIVIDUAL 3.

e. A purported letter from the Department of Defense Manpower Data Center, dated May 21, 2025, indicating that INDIVIDUAL 2 and INDIVIDUAL 3 were enrolled in Tricare, the health insurance plan for servicemembers and their dependents.

29. WELCH leased an apartment in Virginia for INDIVIDUAL 2 and INDIVIDUAL 3, who resided there through approximately November 2025 when they were evicted due to non-payment of rent, and due to WELCH attempting to use forged checks to pay rent.

30. WELCH continued to provide financial support to INDIVIDUAL 2 and INDIVIDUAL 3 through at least March 2026, with knowledge that they were illegally in the United States.

**THEFT OF GOVERNMENT MONEY**

31. Between on or about May 1, 2022, and on or about November 1, 2024, WELCH used his GTC for unauthorized expenses and provided vouchers to the United States which contained false information.

32. WELCH used his DC National Guard computer to manufacture fake receipts for expenses which were never incurred, such as for fictitious hotel stays and car rental, and sought reimbursement from the United States.

33.   WELCH made false statements to his chain of command to receive permission to travel and use his GTC, purporting that he was travelling for official purposes, but was in fact traveling to visit INDIVIDUAL 2.

34.   Between approximately May 2022 and September 2024, WELCH made approximately $17,072 of unauthorized charges to his GTC for purported work travel expenses for travel which was either not authorized by his chain of command, or which was authorized on the basis of false statements from WELCH.

35.   Between approximately June 2023 and June 2024, WELCH made approximately $15,815 of unauthorized charges to his GTC for hotel stays in the Northern Virginia area.  The hotel stays were not for any official purpose, and were for WELCH to video call INDIVIDUAL 2 and represent that he was living in hotels and not living with INDIVIDUAL 1.

36.   Between approximately June 2024 and October 2024, WELCH made approximately $21,995 of unauthorized charges to his GTC to pay for the travel and living expenses of INDIVIDUAL 2 and INDIVIDUAL 3.

37.   All proceeds realized by WELCH from the GTC theft scheme have been dissipated and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

Respectfully submitted,

JEANINE F. PIRRO
UNITED STATES ATTORNEY

By: _____
S. Babu Kaza, DC Bar No. 1033670
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W. | Washington, D.C. 20530
(202) 803-1652 | Sridhar.Babu.Kaza@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding these offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I read every word of this Statement of Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: 7-6-26

COLLIN L. WELCH
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 7-6-26

GREGORY ROSEN, Esq.
Counsel for Defendant COLLIN L. WELCH